UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MICHELLE HEDMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br>　v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>　　　　Defendant. | Case No.: 16-cv-1079<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**Jury Trial Demanded** |

Plaintiff Michelle Hedman (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

**NATURE OF ACTION**

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully placing telephone calls to Plaintiff's and Class members' cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA"). This class action also seeks redress for debt collection practices that violate the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

2. Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3. Defendant has also violated the WCA by falsely threatening legal action.

4.      Plaintiff brings this action for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

5.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331; 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendant because the conduct at issue occurred in or was directed toward individuals in the state of Wisconsin. Plaintiff received automated telephone calls to her cellular telephone from Defendant after Plaintiff had revoked her consent for such calls. Defendant made automated telephone calls to cellular telephones, including Plaintiff's, that are assigned a Wisconsin-based telephone number. Defendant has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Wisconsin. Defendant does substantial business in Wisconsin.

7.      Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls/text messages to persons in this District and debt collection activities, occurred in this District.

## PARTIES

8.      Plaintiff Michelle Hedman ("Hedman") is an individual citizen of the State of Wisconsin, who resides in South Milwaukee, Wisconsin.

9.      Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in consumer credit transactions. Wis. Stat. § 421.301(10).

10. Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its primary place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491.

11. Capital One is engaged in the business of collecting debts owed to itself and others that were incurred for personal, family or household purposes.

12. Capital One is a "merchant" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(25), in that it extended credit to Plaintiff.

13. The alleged debt that Capital One was attempting to collect from Plaintiff arose from alleged purchases on Plaintiff's personal Capital One credit card account.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

14. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

16. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

17. The FCC, has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are "calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

18. The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls...made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

19. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain ***prior express written consent*** from the recipient prior to making automated calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

20. The FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

21. In the same omnibus order, the FCC clarified "that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in

which revocation may occur." TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 29-30.

22. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

## THE WISCONSIN CONSUMER ACT'S DEBT COLLECTION CHAPTER ("WCA"), Ch. 427, Wis. Stats.

23. The WCA was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

24. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

25. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).

5

26. Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

27. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activity of creditors attempting to collect debts. *See* Wis. Stat. § 427.104. The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stat. §§ 426.110(1) and 426.110(4)(e).

28. Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

29. Credit card accounts are "open-end credit plans," pursuant to the WCA, Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.").

30. With respect to Plaintiff's and the class members' alleged debts, Capital One is a debt collector engaging in debt collection, as defined in the WCA, Wis. Stat. §§ 427.103(2) and (3) ("Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer. "Debt collector" means any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.).

31. Original creditors, including Capital One, are debt collectors under the WCA. Wis. Stat. § 427.103; *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002) ("Unlike the [Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq.], the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector.").

32. The Wisconsin Supreme Court has held that Courts should interpret the WCA consistently with the FDCPA. *See Brunton v. Nuvell Credit Corp.*, 325 Wis. 2d 135, 161 n.12, 785 N.W.2d 302, 314 n.12 (2010) (coordinating the Wisconsin Supreme Court's interpretation of the WCA with the FDCPA, and noting that other courts have done so as well). In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard for the analysis of WCA debt collection actions, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## FACTUAL ALLEGATIONS

### *TCPA Claims*

33. At all times relevant, Hedman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

34. Hedman originally provided her cellular telephone number, ending in 4933, to Capital One.

35. After Hedman was unable to make payments on her account, Capital One began calling Hedman's cellular telephone repeatedly.

36. On July 15, 2016, Hedman sent a letter by certified mail with a return receipt to Capital One. In the letter, Hedman revoked consent to call Hedman's cellular phone. A copy of the letter is attached as <u>Exhibit A</u>.

7

37. The return receipt, attached as Exhibit B, was stamped "July 16, 2016," and reflects that "Zoltan Boka" signed for Exhibit A on behalf of Capital One.

38. On or around July 22, 2016, Plaintiff received a letter from Capital One. A copy of this letter is attached as Exhibit C.

39. Exhibit C is dated July 20, 2016, and states:

> Dear Michelle L Hedman,
>
> Thanks for contacting us about your Capital One® account.
>
> We have placed a note on the account based on the content of your correspondence.
>
> If you have any questions, please give us a call at 1-800-955-7070. We're available anytime, seven days a week.
>
> Sincerely,
> Capital One

40. Upon information and belief, Exhibit A is the "correspondence" referred to in Exhibit C, and the "note on the account" is Capital One's acknowledgment that Hedman had revoked consent for Capital One to call Hedman's cellular phone.

41. Capital One placed several additional telephone calls to Hedman's cellular telephone after Capital One acknowledged receiving Exhibit A:

    a. July 20, 2016, 12:24 PM and 4:31 PM

    b. July 21, 2016, 8:14 AM and 6:27 PM

    c. July 22, 2016, 9:52 AM and 3:28 PM

    d. July 23, 2016, 2:40 PM

    e. July 24, 2016, 11:49 AM

    f. July 25, 2016, 8:12 AM and 1:24 PM

    g. July 26, 2016, 8:48 AM and 1:59 PM

8

    h. July 27, 2016, 8:40 AM and 2:09 PM

  42. Capital One also placed several additional calls between July 16, 2016 and July 20, 2016:

    a. July 16, 2016, 1:21 PM

    b. July 17, 2016, 4:28 PM

    c. July 18, 2016, 10:39 AM and 3:25 PM

    d. July 19, 2016, 1:25 PM and 8:11 PM

  43. The call history on Hedman's cellular phone indicates that all of the calls listed above were made from the number 800-955-6000. This telephone number belongs to Capital One.

  44. Upon information and belief, Capital One's records will show the date that Capital One actually received <u>Exhibit A</u>.

  45. Capital One also left prerecorded voicemails on Plaintiff's cellular phone during the following calls:

    a. July 16, 2016, 1:21 PM

    b. July 17, 2016, 4:28 PM

    c. July 18, 2016, 10:39 AM

    d. July 19, 2016, 1:25 PM

    e. July 20, 2016, 12:24 PM

    f. July 21, 2016, 8:14 AM

    g. July 22, 2016, 3:28 PM

    h. July 23, 2016, 2:40 PM

    i. July 24, 2016, 11:49 AM

j. July 25, 2016, 8:12 AM

k. July 26, 2016, 1:59 PM

l. July 27, 2016, 8:40 AM

46. Each of the voicemails consisted of the same prerecorded message requesting that Plaintiff call Capital One.

47. Capital One is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

48. All telephone contact by Capital One to Hedman on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

49. The telephone number that Capital One used to contact Hedman, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

50. On July 15, 2015, Hedman revoked any "prior express consent" given to Capital One to place telephone calls or text messages to Hedman's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

51. Capital One's telephone calls/texts to Hedman's Tracfone cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

52. Capital One's SMS advertisements were sent to Hedman's cellular phone utilizing an "automatic telephone dialing system" for non-emergency purposes and in the absence of Hedman's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

10

Case 2:16-cv-01079-DEJ    Filed 08/12/16    Page 10 of 20    Document 1

53. Under the TCPA, the burden is on Defendants to demonstrate that Capital One currently had prior express consent within the meaning of the statute.

54. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

### *WCA Claims*

55. On or about April 15, 2016, Capital One sent a debt collection letter to Plaintiff by email, regarding an alleged debt allegedly owed to Capital One. A copy of this email is attached to this Complaint as Exhibit D.

56. Upon information and belief, the alleged debt referred to in Exhibit D is an alleged credit card account, allegedly owed to Capital One.

57. Upon information and belief, Exhibit D is a form email communication, generated by computer, and with the information specific to Plaintiff inserted by computer.

58. Exhibit D threatens litigation against Plaintiff, stating:

> If you continue to miss payments, this account may be forwarded to a lawyer in your state to review for a possible lawsuit.* We want to prevent this from happening. Here are some of your options:
>
> - Make your minimum payment of **$1,297.00 by April 27, 2016** to bring this account out of Collections. You may be able to regain use of your card, but **you must call us to discuss this option** before making your payment.
> - If you can't quite make that payment, you can make a lower payment amount of **$204.00 by April 27, 2016**. This amount won't bring your account up to date at this time, but it will prevent your account from becoming more past due.
> - Call us about splitting your payments into smaller amounts over a few months.
>
> **It's important that you call us today at 1-800-955-6600.** Please have Email ID ▓▓▓▓ ready, so an agent can serve you more quickly. We'd like to help.
>
> *No decision has been made to sue you yet. You will have an opportunity at any court hearing to raise any applicable defenses or property exemptions.

11

59. Upon information and belief, despite the threat of lawsuit, at the time Capital One mailed Exhibit D, Capital One had no intention of bringing a lawsuit against Plaintiff.

60. Lawsuits are not the "regular course" for Capital One. Upon information and belief, Capital One sends the vast majority of post charge-off, delinquent accounts to collection agencies and/or to debt purchasers, and also continues ordinary, telephonic and direct mail collection efforts on its own behalf, instead of initiating legal action.

61. Upon information and belief, the decision of how to collect consumers' accounts is generally made months after letters or emails in the form of Exhibit D are sent to customers, and is often made automatically, by computer, with little or no human input.

62. The statements about forwarding for a possible lawsuit and that the consumer would have the opportunity at any court hearing to raise defenses or "property exemptions," together indicate to the unsophisticated consumer that litigation is imminent.

63. The WCA specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt." Wis. Stat. § 427.104(1)(L).

64. At the time Capital One sent Exhibit D to Plaintiff and the class, Capital One had no intention of suing Plaintiff or any class member.

65. Capital One's conduct would also be a violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") if the FDCPA applied to original creditors. Plaintiff does not bring an FDCPA claim in this action. *See* 15 U.S.C. § 1692a(6).

66. The WCA is to be interpreted consistently with the FDCPA. *See Brunton v. Nuvell Credit Corp.*, 325 Wis. 2d 135, 161 n.12, 785 N.W.2d 302, 314 n.12 (2010) (coordinating the Wisconsin Supreme Court's interpretation of the WCA with the FDCPA, adopting the

12

Seventh Circuit's objective "unsophisticated consumer" standard, and noting that other courts have done so as well).

67. Like the WCA, the FDCPA prohibits false and misleading "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

68. Debt collection letters that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989). Such conduct also violates Wis. Stat. § 427.104(1)(L).

69. Even indirect or oblique threats give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136.

70. Capital One threatened that a lawsuit against Plaintiffs and the class members was imminent unless the recipient of the letter paid up. In reality, Capital One had no idea whether it would sue, continue "in-house" collection efforts, hire a debt collection agency, sell the account to a debt buyer or do nothing.

71. The threat of litigation is false and misleading and exists only to unfairly scare consumers.

72. Plaintiff was confused by Exhibit D.

73. Plaintiff interpreted Exhibit D to mean that Capital One would sue her if she did not pay by the date stated in the email, April 27, 2016.

74. Solely in response to Capital One's misrepresentation that legal action was imminent, Plaintiff called Capital One on April 25, 2016 and agreed to make a $250.00 payment. A copy of the email confirmation of her telephone payment is attached as Exhibit E. A copy of

13

the a letter confirming her telephone payment that Capital One mailed to Plaintiff on or around April 26, 2016 is attached as Exhibit F.

75. As a result of Capital One's actions, Plaintiff suffered emotional distress.

76. Capital One's misrepresentations are likely to cause emotional distress to the customer, who is afraid of being sued. *See* Wis. Stat. § 427.105(1) ("actual damages shall include damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by a violation of this chapter").

77. Plaintiff also had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit D.

78. Moreover, the Wisconsin Legislature has explicitly described one purpose of the WCA as "protect[ing] customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." Wis. Stat. § 421.102(2)(b). Any person who receives a debt collection letter containing a violation of the "Prohibited Practices" described in Wis. Stat. § 427.104(1) is a victim of unfair, deceptive, false, misleading and unconscionable practices by a merchant.

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.**

79. Hedman incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

80. The foregoing acts and omissions of Capital One constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

81. As a result of Capital One' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Hedman and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

82. Hedman and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA and WCA by Capital One in the future. Hedman and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

83. Hedman incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

84. The foregoing acts and omissions of Capital One constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

85. As a result of Capital One' violations of 47 U.S.C. § 227 *et seq.*, Hedman and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. Hedman and Class members are also entitled to and do seek injunctive relief prohibiting Capital One' violation of the TCPA in the future.

87. Hedman and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT III - WCA

88. Hedman incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

15

89. Purchases allegedly made using Plaintiff's Capital One credit card were "consumer credit transactions" under the WCA. Wis. Stat. §§ 421.301(10).

90. Capital One's letters falsely represented that Capital One would sue Plaintiff and each class member.

91. In fact, Capital One had not determined whether it would sue Plaintiff or any class member when Exhibit D was mailed to the class.

92. Capital One only sues on a miniscule portion of allegedly delinquent accounts. Capital One violated Wis. Stat. § 427.104(1)(L).

93. Capital One's conduct violated Wis. Stat. § 427.104(1)(L).

## CLASS ACTION ALLEGATIONS

94. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

95. Plaintiff defines two classes.

96. Class 1, or the "TCPA Class," is defined as:

All persons within the United States who, on or after August 12, 2012, received a non-emergency text message from or on behalf of Capital One to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and who either did not provide their cellular telephone number to Capital One or who revoked prior express consent to contact the person's cellular phone.

Plaintiff Hedman represents, and is a member of, the Class. Excluded from the Class is Defendant Capital One and any entities in which Capital One or its parent company has a controlling interest; Capital One's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

97. Class 2, or the "WCA Class," is defined as:

All natural persons in the State of Wisconsin to whom Capital One sent a collection email in the form represented by Exhibit D to the Complaint in this action, seeking to collect

16

debt for personal, family or household purposes, on or after August 12, 2014, (e) that was not returned by the postal service, and after which email was sent, Capital One did not file a lawsuit within nine months or Capital One referred the underlying debt to a non-attorney debt collector or Capital One sold the underlying debt to a debt purchaser.

Plaintiff Hedman represents, and is a member of, the Class. Excluded from the Class is Defendant Capital One and any entities in which Capital One or its parent company has a controlling interest; Capital One's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

98. Hedman does not know the exact number of members in the Class, but Hedman reasonably believes that Class members number at minimum in the hundreds, if not thousands.

99. Hedman and all members of the Class have been harmed by the acts of Capital One.

100. This Class Action Complaint seeks injunctive relief and money damages.

101. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Capital One and/or its agents.

102. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether Capital One and/or its agents made non-emergency calls/texts to Hedman's and Class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

b. Whether Capital One can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

c. Whether Capital One falsely threatened legal action when Capital One had not determined whether it would sue;

d. Whether Capital One' conduct was knowing and/or willful;

e. Whether Capital One is liable for damages, and the amount of such damages; and

f. Whether Capital One should be enjoined from engaging in such conduct in the future.

103. Hedman asserts claims that are typical of each Class member. Hedman will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

104. Hedman has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

105. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Capital One is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

18

106. Capital One has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Hedman alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## JURY DEMAND

107. Hedman hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA and WCA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff Hedman seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff Hedman seeks for herself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. As a result of Defendant's violations of Wis. Stat. § 427.104(1)(L), an award of the greater of $100 to $1,000 or actual damages per class member;

E. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

F. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

    G.    Such other relief as the Court deems just and proper.

Dated: August 12, 2016

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com